## COREY v. DETROIT STEEL CORPORATION.
### No. 3704.

District Court, E. D. Michigan, S. D.
July 31, 1943.

Bresnahan & Bresnahan, of Detroit, Mich., for plaintiff.

Sempliner, Dewey, Stanton & Honigman, of Detriot, Mich., for defendant.

## Findings of Fact

LEDERLE, District Judge.

1. This is an action brought under the Fair Labor Standards Act of 1938, 29 U. S.C.A. §§ 201–219.

Plaintiff was employed by the defendant corporation in Detroit, Michigan, from prior to the effective date of the Act, October 24, 1938, until July 7, 1942, when he voluntarily left the defendant's employment. Plaintiff's complaint alleges that during this period he worked a specified number of hours more than the statutory straight-time maximum, that under the Act he should have been paid time and a half for such overtime, that he was paid only straight time, and, consequently, in accordance with the provisions of the Act, he is entitled to recover the difference between time and a half and straight time, namely, $2,549.77, with a like amount for liquidated damages, plus an allowance for legal fees.

Defendant admits that, generally, it is subject to the provisions of the Act, being engaged in the production of goods for commerce, but denies that it was ever under any obligation to pay plaintiff time and a half overtime compensation because plaintiff was at all times a bona fide executive within the meaning of the so-called "executive and administrative exemption" provided by the Act.

2. The record establishes that the defendant's employment policies were extremely liberal. Plaintiff made no request for time and a half overtime compensation while he was employed by the defendant, but shortly after he left, while the relationship between defendant's officers and plaintiff appeared to be extremely friendly, plaintiff did make a demand, and an attempt was made to adjust the differences. At this time the officers of defendant corporation tendered a check for $182.19 to plaintiff which he refused. Some eight months later the complaint in this case was filed.

3. Defendant corporation operates a comparatively small steel mill in the City of Detroit, Michigan, employing an average of approximately 125 men. At the effective date of the Act, defendant had in its mill an established and recognized Maintenance Department, with complete jurisdiction over maintenance and repairs of the plant, machinery and equipment. This department was under the supervision of a designated "Superintendent of Maintenance," who was responsible to no one other than the General Superintendent of the plant.

4. From October 24, 1938, to the end of 1940, plaintiff was employed as defendant's "Night Superintendent of Maintenance." In this position plaintiff did not manage the Maintenance Department, but was subject to the direction and instructions of the general Superintendent of Maintenance. There were few employees assigned to the night shift, and it was plaintiff's duty to, and he did, do actual maintenance and repair work of the same nature as that performed by the nonexempt employees of the Maintenance Department. During the whole period that he was Night Superintendent this was a substantial part of his work and amounted to more than 20% of the total hours worked by nonexempt employees.

5. From October 24, 1938, to the end of December, 1940, while thus working nights, plaintiff served 1,102½ hours beyond the straight-time maximum provided in the Act. The difference between time and a half for this overtime, and the straight time paid plaintiff, amounts to $689.06. During this same period defendant paid various employees extra compensation which it called "bonuses." The total of plaintiff's bonuses for this period was $400. Defendant claims that if it is determined that plaintiff should have been receiving time and a half overtime for this period, defendant is entitled to have these bonuses considered and credited as com-

140

pensation for services, and, if this is done, plaintiff's unpaid overtime compensation for this period would amount to $289.06.

6. The question of whether the payments referred to as bonuses should be considered as compensation or as a gift from defendant corporation to plaintiff requires a consideration of all the surrounding facts and circumstances. Considering all these in this case, I am forced to, and do, conclude that payment of these so-called bonuses was in the nature of compensation for services and not a gift of the corporation's money to the plaintiff.

7. On December 28, 1940, plaintiff was promoted to the position of general "Superintendent of Maintenance," filling the vacancy created by retirement of the employee who had held that position with defendant for many years. From then until he left defendant's employ, plaintiff's sole duty consisted of managing the Maintenance Department. During this period the number of employees in this department varied from 12 to 18. Plaintiff had complete charge of the department and exercised wide discretionary powers. He was responsible to no one other than the General Superintendent of the plant. It was his duty to consult with officers and other departments of defendant's plant relative to repairs and maintenance, to decide when and how maintenance and repair work should be done, to organize the work of the Maintenance Department, to instruct and direct all other employees of the department as to their duties and work and supervise them at all times during their employment, to decide upon and order necessary material and supplies and keep job cost records for the department, to decide how many employees to have on duty, what hours they were to work, and what duties they were to perform. He interviewed prospective employees for the department. His suggestions and recommendations as to hiring, firing, promoting or other change of status of employees of the department were given particular weight, and, in all cases where these questions arose, were followed.

Plaintiff was an experienced electrician and maintenance man at the time he assumed management of the Maintenance Department. A large part of repair work during the time he was Maintenance Superintendent consisted of repairs to electrical equipment. A great part of the time that it appeared to some witnesses, employees

in various departments of defendant's plant, that plaintiff was engaged in manual activities, was his investigation to determine the cause of this electrical or other trouble, and the best way to lay out the work for the employees to do. The portions of manual repair and maintenance work, if any, that plaintiff did, his subordinates were expected to do under his direction. It is clear that in a position of this kind there are times when the executive will appear to the observer as doing manual work, when, as a matter of fact, he is merely making an investigation or exercising his discretion in laying out the work for his subordinates. Taking into consideration the testimony of the various witnesses, having in mind the interest they had in this suit, and applying the usual standards applied to test the credibility of witnesses, I am forced to, and do, conclude that during this period plaintiff was not expected to, and did not, for 20% of the number of hours worked in the work-week by the nonexempt employees under his direction, perform work of the same nature as that performed by such nonexempt employees.

During the time plaintiff acted as Superintendent of Maintenance, his compensation was greatly in excess of the $30 per week specified in the applicable executive exemption definition, being $6,586.77 for the year 1941 and $2,781.04 for the half-year ending July 7, 1942, at a specified hourly rate, with a guaranteed minimum salary of $30 per week.

8. In accordance with the terms of the Act, an employee who recovers in an action of this kind is entitled to have a reasonable attorney fee allowed. In arriving at my conclusion as to the reasonable value of the services rendered by plaintiff's counsel, I have attempted to eliminate entirely from consideration that portion of the effort directed toward plaintiff's unsuccessful attempt to establish that he was entitled to overtime compensation during the years 1941 and 1942. Therefore, this finding will relate solely to the successful efforts of plaintiff's counsel in securing an additional payment for the years 1938, 1939 and 1940. Taking into consideration the results accomplished, the amount of money involved, the amount of work done, the length of time employed, the necessity for doing the work, having in mind the usual and accepted tests to be applied in cases of allowance of fees of this kind, and taking

into consideration the Detroit Bar Association minimum fee schedule adopted April 12, 1938, I have concluded that the reasonable value of the services rendered by plaintiff's counsel is $150. I am not unmindful of the fact that this allowance might seem excessive if one considers only the amount of the recovery, but, under the circumstances, it is my opinion that the amount is reasonable.

## Conclusions of Law

1. This is an action brought under the Fair Labor Standards Act of 1938, an act of Congress regulating commerce, defendant is subject to the provisions of the Act, the parties are located in this District, and this court has jurisdiction. 28 U.S.C.A. § 41(8); 29 U.S.C.A. § 201 et seq.

2. An employee engaged in connection with maintenance and repair of plant and equipment used in production of goods for commerce from October 24, 1938, to October 24, 1940, whose primary duty was not the management of a customarily recognized department of the establishment and who did a substantial amount of work of the same nature as that performed by nonexempt employees, and, after October 24, 1940, whose hours of work of the same nature as that performed by nonexempt employees exceeded 20% of the number of hours worked in the work week by nonexempt employees under his direction, was not a bona fide executive exempt from the Act but an employee within the meaning of the Act, compensable at the rate of time and a half for overtime. Consequently, plaintiff was in this employee category from October 24, 1938, to December 28, 1940, and his overtime compensation for this period should have been computed on a time and a half basis instead of straight time. 29 U.S.C.A. §§ 203(j), 207 and 213 (a) (1); Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; 1938 Supp., Code of Fed.Reg., Title 29, § 541.1; 1940 Supp., Code of Fed.Reg., Title 29, § 541.1.

3. A payment made to an employee by an employer may be compensation for services, even though made voluntarily and without legal obligation, and where it appears from consideration of all the surrounding facts and circumstances that a bonus was not a gift of the employer to the employee, the same should be considered as compensation for services. Bass v. Hawley, 5 Cir., 62 F.2d 721; Willkie v. Commissioner, 6 Cir., 127 F.2d 953; Thomas v. Commissioner, 5 Cir., 135 F.2d 378.

4. In calculating the amount due plaintiff, all of the payments received by him including the bonus should be taken into consideration. Deduction of the amounts already paid must be made before any calculation of the statutory "additional equal amount as liquidated damages" is made. Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 553, 140 A.L.R. 1258, certiorari denied, 316 U.S. 704, 62 S.Ct. 1305, 86 L.Ed. 1772.

5. After October 24, 1940, an employee (a) whose primary duty consisted of the management of the customarily recognized maintenance department of a plant in which goods were produced for commerce, (b) who customarily and regularly directed the work of other employees therein, (c) whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change in status of other employees was given particular weight, (d) who customarily and regularly exercised discretionary powers, (e) who was compensated for services on a salary basis at not less than $30 per week, and (f) whose hours of work of the same nature as that performed by nonexempt employees did not exceed 20% of the number of hours worked in the work week by the nonexempt employees under his direction, was a bona fide executive exempt from the provisions of the Fair Labor Standards Act. Consequently, plaintiff was a bona fide executive from December 28, 1940, to July 7, 1942, and defendant was under no obligation to compensate him at the rate of time and a half for overtime. 29 U.S.C.A. §§ 203(j), 207, and 213(a) (1); Kirschbaum Co. v. Walling, supra; 1940 Supp., Code of Fed.Reg., Title 29, § 541.1; Wilkinson v. Noland Co., D.C., 40 F.Supp. 1009.

6. Plaintiff is entitled to recover from defendant the sum of $289.06 for unpaid overtime compensation for the period from October 24, 1938, to December 28, 1940, plus an equal amount as liquidated damages, or, a total of $578.12. 29 U.S.C.A. § 216; Bumpus v. Continental Baking Co., supra.

7. In addition to the foregoing, an attorney fee of $150 shall be allowed to plaintiff, plus costs of this action. 29 U.S. C.A. § 216; Lewis v. Nailling, D.C., 36

F.Supp. 187; Robinson & Co. v. Larue, 178 Tenn. 197, 156 S.W.2d 432.

8. Consequently, judgment shall be entered herein in favor of plaintiff and against defendant for $578.12, plus an attorney fee of $150, with costs taxable in plaintiff's favor.